[No. F010196. Fifth Dist. Aug. 4, 1988.]

CALIFORNIA SCHOOL EMPLOYEES ASSOCIATION et al., Plaintiffs and Appellants, v.

DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Respondents.

**[Opinion certified for partial publication.†]**

† Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Peter A. Janiak, Madalyn J. Frazzini, E. Luis Saenz, Marcia L. Meyers, William C. Heath, Harry J. Gibbons, Jr., Maureen C. Whelan and Christine Bleuler for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, N. Eugene Hill, Assistant Attorney General, Paul H. Dobson and Faith J. Geoghegan, Deputy Attorneys General, for Defendants and Respondents.

OPINION

**MARTIN, Acting P. J.**—The California School Employees Association, its Woodland chapter No. 118 and Lee Ann Schaupp (Schaupp) appeal from a judgment in favor of the California Department of Motor Vehicles (DMV) and the Certificate Action Review Board (CARB) denying a petition for writ of mandate under Code of Civil Procedure section 1094.5 to reinstate Schaupp's school bus driver's certificate. At issue is whether the minimum medical requirements for visual acuity can be waived and considered on a case-by-case basis or whether under the California statutes and regulations persons with less than 20/40 Snellen test visual acuity[1] are absolutely barred from issuance of a school bus certificate.

Schaupp had possessed a school bus driver's certificate and had driven a school bus since 1972. On February 9, 1984, the DMV refused to renew her certificate. At Schaupp's request, a hearing was held before a referee on April 10, 1984. The referee's decision recommended Schaupp's certificate be reinstated and the denial of her school bus certificate be set aside.

On May 4, 1984, CARB reversed the referee's proposed decision and sustained the denial of Schaupp's application for the certificate.

On July 30, 1984, appellants filed a petition for writ of mandate in Sacramento County Superior Court for reinstatement of Schaupp's certificate. A hearing was held before the Honorable Lloyd A. Phillips, Jr., after which the court remanded the cause to respondents for further findings and retained jurisdiction to review those findings.

---

[1] The Snellen test is the standard test in the United States to evaluate visual acuity. Visual acuity is the assessment of an individual's ability to resolve characters and his/her ability to discern and read the written language.

A referee conducted the further hearing on July 31, 1985, and on October 1, 1985, issued a recommendation that Schaupp's certificate be reinstated. On November 8, 1985, CARB again reversed the referee's proposed decision and refused to reinstate Schaupp's school bus driver's certificate.

Appellants filed a noticed motion for writ of mandate on February 11, 1986. After a court hearing on March 28, 1986, the court issued its tentative decision on May 9, 1986, denying the writ. Judgment was entered on June 16, 1986, and the notice of entry of judgment was filed on June 30, 1986. Schaupp filed a timely notice of appeal.

## FACTS

Schaupp had possessed a school bus driver's certificate and had driven a school bus since 1972. Upon application to DMV for a renewal of her school bus driver's certificate in December of 1983, a vision examination revealed the visual acuity in her left eye was 20/200. This was due to a congenital condition known as amblyopia or "lazy eye." Schaupp testified her vision had not changed appreciably since 1972 and she considered her condition stable. From 1972 until December of 1983 Schaupp had submitted to regular vision tests pursuant to DMV requirements.

On February 9, 1984, the DMV issued an order denying Schaupp's application, effective February 13, 1984, due to her failure to "meet the minimum medical standards set forth by this Department in section 100.10 of Title 13 of the California [Code of Regulations (formerly California Administrative Code)]." At Schaupp's request, a hearing was held on April 10, 1984, after which the referee recommended that although Schaupp failed to meet the medical standards, denial of the certificate was unwarranted in that Schaupp had apparently compensated for her medical impairment.

The hearing report and recommendation of the referee and Schaupp's records maintained by DMV were reviewed by CARB.

The visual acuity of Schaupp's left eye was reflected on previous visual examination reports as follows:

1.  December 11, 1975—20/100.

2.  April 2, 1976—20/20.

3.  May 5, 1980—20/20.

4. May 4, 1982—20/100.

5. December 28, 1983—20/200.

Schaupp submitted a report from an optometrist indicating the visual acuity of her left eye to be 20/200 and the report from another optometrist showing her visual acuity of the left eye to be 20/100.[2]

Schaupp had been involved in three accidents while driving a school bus; two in 1981 and a third in 1982. The first two accidents were not charged against her, but in the most recent accident Schaupp backed the bus into an automobile.

After a review of the hearing report and Schaupp's records, CARB denied her application for the school bus driver's certificate for her failure to meet the medical standards pursuant to sections 100.10 and 1208, subdivision (b)(10), of title 13 of the California Code of Regulations.[3]

Schaupp thereupon petitioned the superior court for a writ of mandate ordering the DMV to reinstate her certificate. The superior court remanded the matter to the DMV for a hearing as to the nature of her visual condition and her ability to drive a school bus safely. The lower court also ordered the DMV to make findings as to whether Schaupp had monocular vision and the applicability of certain statutes, particularly whether the minimum visual standards of 49 Code of Federal Regulations,[4] section 391.41 (1978) are mandatory or can be waived by the DMV pursuant to Vehicle Code sections 12804, subdivision (a) and 12806, subdivision (a).

Testimony elicited at the July 31, 1985, DMV hearing on remand from the superior court indicated Schaupp's visual acuity in her left eye is either 20/60 minus 2 without correction or 20/100 minus 2 without correction and 20/50 minus 2 with correction.

Dr. Warren, an ophthalmologist in private practice, testified Schaupp's vision to be 20/15 minus 2 in the right eye, which is better than average. Without correction, the left eye was 20/100 minus 2 but with a mild correction for astigmatism, it was 20/50 minus 2. According to Dr. Warren, Schaupp has good binocular (two-eyed) peripheral vision but her central vision is monocular (one-eyed). He further testified that corrective lenses

---

[2] Vision of 20/20 is considered normal; 20/200 is considered legally blind.
[3] All citations to the California Code of Regulations are to title 13.
[4] All citations to the Code of Federal Regulations (hereinafter CFR) are to title 49.

would be of no assistance since the visual impairment, amblyopia, is caused by suppression of vision in the left eye by the brain and the dominant eye then attempts to take over and compensate. In his opinion, if Schaupp's right eye were to become incapacitated while driving, central visual acuity of 20/50 in the remaining eye would be adequate to allow her to pull off the road and avoid objects.

On November 8, 1985, CARB sustained the denial of the certificate under California Code of Regulations, section 1208, subdivision (b)(10), stating Schaupp did not meet the minimum medical standards as set forth in California Code of Regulations, section 100.10.

The superior court upheld the CARB denial of the certificate and determined that Schaupp's failure to meet the minimal medical standards automatically disqualified her for a school bus driver's certificate pursuant to California Code of Regulations, section 1208, subdivision (b)(10). Thus, the superior court disregarded any evidence as to Schaupp's work performance and/or driving ability.

Discussion

I

There is no dispute that Schaupp's visual acuity fails to meet the minimum medical standards as set forth in CFR, section 391.41(b)(10). The question is whether her failure to meet those standards automatically disqualifies her from obtaining a renewal of her school bus driver's certificate or whether her apparent ability to compensate for her condition and to drive a school bus safely should be considered in determining whether to grant or deny her a certificate. In other words, should the issuance of a certificate to drive a school bus be made on a case-by-case factual basis?

Schaupp contends the minimum vision standards can be waived by the DMV and CARB under Vehicle Code sections 12804, subdivision (a) and 12806, subdivision (a) by specific statutory language allowing the DMV to determine if any physical defect of an applicant is compensated for to ensure safe driving ability.

Vehicle Code section 12804, subdivision (a) governs the examinations for drivers' class 1 or class 2 licenses and in pertinent part provides: "In establishing the requirements, consideration *may* be given to the standards presently required of motor carrier drivers by the Federal Highway Administration. Any physical defect of the applicant, which, in the opinion of the

department, is compensated to ensure safe driving ability, shall not prevent the issuance of a *license* to the applicant." (Italics added.)

It is important to note that Vehicle Code section 12804, subdivision (a) governs the issuance of a driver's *license* rather than a bus driver's certificate. The certificate is required in addition to a class 3 license for operating any school bus. Vehicle Code section 12804, subdivision (d)(1) provides: "A class 3 license shall be valid for operating any school bus, school pupil activity bus, youth bus, or farm labor vehicle when a special driver's certificate to permit the operation of those vehicles is also in the immediate possession of the licensee. A class 3 license shall also be valid for operating any of those vehicles with no passengers aboard while receiving behind-the-wheel driver training from a person having in his or her immediate possession a special driver's certificate to permit the operation of the vehicle."

Vehicle Code section 12806, subdivision (a) at all times in question provided: "Any physical or mental defect of the applicant which in the opinion of the department does not affect the applicant's ability to exercise reasonable and ordinary control in operating a motor vehicle upon the highway shall not prevent the issuance of a *license* to the applicant." (Italics added.)

Again, it is noted that section 12806 of the Vehicle Code relates to *licenses* rather than school bus driver's certificates.

The issuance of a school bus driver's certificate is governed by Vehicle Code section 12517 which provides in pertinent part: "(a) No person shall operate a school bus unless that person has in his or her immediate possession a valid driver's license for the appropriate class of vehicle to be driven, and when transporting one or more pupils at or below the 12th-grade level to or from a public or private school or to or from public or private school activities, the person shall also have in his or her immediate possession a certificate issued by the department to permit the operation of school buses.

". . . . . . . . . . . . . . . . . .

"(c) The applicant for a certificate to operate a school bus or school pupil activity bus shall meet the eligibility and training requirements specified for school bus and school pupil activity busdrivers in the regulations adopted by the Department of the California Highway Patrol, and shall pay a fee of twelve dollars ($12) with the application for issuance of the certificate."

The California Highway Patrol (CHP) has promulgated regulations establishing the requirements for school bus driver certificates. These regula-

tions specify training, instructional and medical requirements. (Cal. Code Regs., § 1203 et seq.) The CHP also promulgated regulations governing the suspension or revocation of the certificate as set forth in California Code of Regulations, section 1208. Section 1208 sets forth two categories for denying or revoking certificates. Subdivision (a) of section 1208 of the California Code of Regulations lists the mandatory denials or revocations of certificates. Subdivision (b) lists the discretionary grounds for denial or revocation of certificates. It is not argued that subdivision (a) is applicable to the instant case. California Code of Regulations, section 1208, subdivision (b)(10) provides: "(b) *Discretionary.* DMV *may* deny,[ ] suspend, or revoke a school bus . . . driver certificate for any of the following causes when the applicant or certificate holder:

"*.* . . . . . . . . . . . . . . . . . .

"(10) Does not meet the minimum medical standards set forth by DMV in Section 100.18 [formerly 100.10] of this title." (Italics added.)

The basis for DMV's basic position is found in section 100.18 (formerly 100.10) of the California Code of Regulations, which states: "The minimum medical requirements for a Class 1 or 2 license required by Section 12804(a) of the Vehicle Code shall be those standards required of motor carrier drivers by the Federal Highway Administration of the Department of Transportation as set forth in the Federal Motor Carrier Safety Regulations. (49 CFR 391.41)"

CFR, section 391.41[5] provides in part: "(b) A person is physically qualified to drive a motor vehicle if that person—

"*.* . . . . . . . . . . . . . . . . . .

"(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately corrected to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70° in the horizontal Meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber[.]"

CFR, section 391.43 (c) contains the following instructions to the examining physicians: "*Head-eyes.* When other than the Snellen chart is used,

---

[5]CFR section 391.41 was amended in 1986, however, no amendments to the quoted portion of said section occurred.

the results of such test must be expressed in values comparable to the standard Snellen test. If the applicant wears corrective lenses, these should be worn while applicant's visual acuity is being tested. If appropriate indicate on the Medical Examiner's Certificate by checking the box, 'Qualified only when wearing corrective lenses.' In recording distance vision use 20 feet as normal. Report all vision as a fraction with 20 as numerator and the smallest type read at 20 feet as denominator. Note ptosis, discharge, visual fields, ocular muscle imbalance, colorblindness, corneal scar, exophtalmos, or strabismus, uncorrected by corrective lenses. Monocular drivers are not qualified to operate commercial motor vehicles under existing Federal Motor Carrier Safety Regulations. If the driver habitually wears contact lenses, or intends to do so while driving, there should be sufficient evidence to indicate that he has good tolerance and is well adapted to their use. The use of contact lenses should be noted on the record."

CFR section 391.49, as written prior to its amendment September 28, 1984, provided for waiver of certain physical disqualifications, *but not* for visual disabilities.

Thus, section 1208, subdivision (b) of the California Code of Regulations provides that if a candidate or certificate holder fails to meet the minimal medical standards in California Code of Regulations, section 100.18, he or she may be denied a school bus driver's certificate by the DMV. California Code of Regulations, section 100.18, promulgated by DMV, adopts for class 1 or 2 licenses and certificate applicants or holders the minimum medical standards required of motor carrier drivers by the Federal Highway Administration of the Department of Transportation as set forth in the Federal Motor Carrier Safety Regulations found at CFR section 391.41. CFR section 391.41(b)(10) requires a distant visual acuity of at least 20/40 in each eye without corrective lenses or visual acuity separately corrected to 20/40 or better with corrective lenses. It is not disputed Schaupp fails to meet this standard.

It is respondents' position that the federal regulations do not provide for a waiver of this disability and rely, in part, on the Federal Highway Administration, Department of Transportation's Interpretations of the Federal Motor Carrier Safety Regulations. According to those "Interpretations," if the applicant fails to meet one of the visual requirements, he is "disqualified." The phraseology of this interpretation differs from the language used in "Interpretations" of the regulations regarding other impairments. For instance, in interpreting CFR section 391.41(b)(8) regarding epilepsy, the interpretation concludes: "If the results of the examination are negative and anti-convulsant medication is not required, then the driver may be

qualified." Where an impairment concerns the use of a foot, leg, hand, fingers, arm, or other structural defect or limitation, the examining physician must not certify him as qualified to drive a commercial motor vehicle without a waiver. (See CFR § 391.41(b)(8).) Respondents also cite to CFR section 391.43(c) for authority that defects of vision falling below the minimum standards *cannot* be waived.

■    Schaupp contends the provisions of Vehicle Code section 12804, subdivision (a) require the DMV to consider evidence of compensation of physical defects in passing on the qualifications of an applicant for a school bus driver's certificate. According to Schaupp's argument, in adopting the federal requirements, the CHP also adopted the DMV standards for class 1 and class 2 licenses set forth in Vehicle Code section 12804, including the waiver provisions. We reject this argument. As stated earlier, this section only authorizes the DMV to consider evidence of compensation for physical defects in the issuance of a driver's license, not a school bus driver's certificate.

■    Respondents' position is that since the minimal medical standards regarding vision cannot be waived under the federal regulations, they cannot be waived by the DMV or CARB.

The lower court declined to adopt Schaupp's "broad interpretation" and reasoned: "Prior to 1982, a Class 2 license was required to obtain a school bus driver's license. In 1982, the Legislature chose to reclassify the license required to drive a school bus to a Class 3. The effect of this change was to eliminate the medical certificate, required to drive Class 1 or 2 vehicles, from a school bus driver's license. Instead, the CHP was to set forth the minimum medical standards required to drive a bus in order to obtain the school bus driver's certificate. If one interprets Section 1208 as incorporating the standards required for a Class 1 or 2 license, the action of the Legislature in 1982 would be for naught.

"The plain language of Section 1208 adopts the minimum medical standards set forth at Section 100.10 [now 100.18]. The minimum medical standards of Section 100.10, set forth at 49 CFR 391.41, have no waiver provisions for compensation of medical condition in 49 CFR 391.41; therefore there is no waiver provision in Section 1208."

The trial court's analysis and conclusion comports with the conclusion of CARB which determined that the minimal visual standards adopted by section 1208, subdivision (b)(10) of the California Code of Regulations cannot be waived.    ■    We note that a contemporaneous construction of

a statute by an administrative agency charged with its enforcement is entitled to great weight unless it is clearly erroneous or unauthorized. (*Western Oil & Gas Assn.* v. *Air Resources Board* (1984) 37 Cal.3d 502, 520 [208 Cal.Rptr. 850, 691 P.2d 606]; *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal.Rptr. 281, 490 P.2d 793]; *Industrial Indemnity Co.* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].)

■ The case of *Smith* v. *Department of Motor Vehicles* (1984) 163 Cal.App.3d 321 [209 Cal.Rptr. 283], relied upon by Schaupp, is of no assistance. In that case, the DMV revoked a driver's class 1 or 2 (truck and bus) license solely on the ground that he had insulin-controlled diabetes on the basis that said condition automatically disqualified the applicant. The First District Court of Appeal affirmed the trial court's granting of a writ of mandate directing the DMV to reinstate the driver's class 1 or 2 driver's license. It was held that the applicant's insulin-controlled diabetes does not automatically disqualify him from obtaining a class 1 or 2 license, but rather the determination of whether to issue a license to such a person must be made on a case-by-case basis. The court held that although DMV may consider federal standards in establishing the medical requirements for a class 1 or 2 license, procedures must be established whereby an applicant may show the DMV that he or she has compensated for a defect or condition and is capable of driving safely pursuant to Vehicle Code section 12804, subdivision (a). (*Id.* at pp. 326-328.) The *Smith* court had before it a case involving a class 1 or 2 *license.* Vehicle Code section 12804, subdivision (a) specifically provides in clear language the DMV has *discretion* to license an applicant who has overcome or "compensated" a medical problem to ensure safe driving ability. (*Id.* at p. 327.) Thus, *Smith* is distinguishable from the instant case. We are not here dealing with a class 1 or 2 driver's license or the construction and application of Vehicle Code section 12804, subdivision (a). Rather, we are concerned with the construction and application of California Code of Regulations, section 1208, subdivision (b)(10).

■ Since the construction and interpretation of California Code of Regulations, section 1208, subdivision (b)(10), is one of law, rather than of fact, we exercise our independent judgment. (*Estate of Madison* (1945) 26 Cal.2d 453, 456 [159 P.2d 630]; *Cerini* v. *City of Cloverdale* (1987) 191 Cal.App.3d 1471, 1476 [237 Cal.Rptr. 116].) ■ In our view, the trial court erred. Considering California Code of Regulations, sections 1208, subdivision (b)(10), and 100.18 (formerly 100.10) together, in edited form, they provide: "the DMV *may* deny, suspend or revoke a school bus . . . driver certificate . . . when the applicant or certificate holder . . . [d]oes not meet the minimum medical standards . . . as set forth in the Federal Motor Carrier

Safety Regulations. (49 CFR 391.41.)" (Italics added.) As is obvious, the operating word is "may" and it qualifies all that follows. The fact that CFR section 391.41(b)(10) sets forth minimum, nonwaivable visual acuity standards for motor carrier drivers by the Federal Highway Administration of the Department of Transportation is not controlling here. California Code of Regulations, sections 1208, subdivision (b)(10), and 100.18 do not state failure to meet the minimum medical requirements of CFR section 391.41 will automatically or absolutely result in a denial, suspension or revocation of a school bus driver certificate. To the contrary, the sections provide in clear, unambiguous language that the DMV *may* exercise its discretion in determining whether or not to deny, suspend or revoke a certificate when the party does not meet the minimum medical requirements. Had the CHP in promulgating these regulations intended a different result, i.e., a mandatory, no-exception denial, suspension or revocation of the certificate for everyone who failed to satisfy the minimum expressed standards, it need only have changed two words, substitute "Mandatory" for "Discretionary" and substitute "shall" for "may" in California Code of Regulations, section 1208, subdivision (b)(10). The CHP did exactly that in the very preceding subdivision, 1208, subdivision (a), and in subsequent subdivisions. Thus, we must assume the CHP intended to vest the DMV with discretion regarding denial, suspension or revocation of school bus driver certificates for persons who cannot meet the minimum expressed medical requirements. This is particularly true where, as here, the comparison of the two subdivisions, 1208, subdivision (a) versus 1208, subdivision (b), makes so clear the expressed intention of the CHP in the DMV's application of each of the two subdivisions, respectively, to given factual situations.

Thus, we conclude CARB and the trial court erred in their conclusion that under California Code of Regulations, section 1208, subdivision (b), the DMV has no discretion regarding application of the minimum medical standards in CFR section 391.41 to applicants for or holders of school bus driver certificates. In view of this conclusion, we must reverse the judgment below with directions to the trial court to remand this matter to CARB for further proceedings in accordance with the opinions and conclusions expressed herein.

II*

* See footnote, *ante,* page 634.

The judgment is reversed with directions to the trial court to remand this matter to CARB for further proceedings in accordance with the conclusions expressed in this opinion.

Stone (W. A.), J., and Brown (G. A.), J.,* concurred.

---

* Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.