**GREAT AMERICAN NURSING CENTERS, INC., et al.**

**John H. NORBERG, Tax Administrator for the State of Rhode Island.**

No. 88–206–M.P.

Supreme Court of Rhode Island.

Dec. 7, 1989.

Lawrence P. McCarthy, Guido R. Salvadore, Higgins, Cavanagh & Cooney, Providence, for Great American Nursing Centers, Inc. et al.

Marcia McGair Ippolito, Chief Legal Counsel, Div. of Taxation, for John H. Norberg.

Before FAY, C.J., and WEISBERGER, MURRAY and SHEA, JJ.

## OPINION

FAY, Chief Judge.

This appeal is before us on a writ of certiorari from Great American Nursing Centers, Inc., and its wholly owned subsidiaries (Great American). The petitioners appeal from a District Court decision denying and dismissing appeals from two decisions of the tax administrator upholding the division's recomputation of Great American's corporate taxes. We affirm the District Court decision.

Pursuant to G.L.1956 (1970 Reenactment) § 44–11–4, Great American filed a consolidated-business-corporation tax return for the year 1977. The petitioners'

1977 tax return reflected a net worth of $1,031,551.92 with $4,126.20 owing in Rhode Island taxes. After the filing, the tax division recomputed the taxes owing the State of Rhode Island at $10,627.59. The reason for the increased tax was the tax administrator's inclusion in petitioners' net worth of all indebtedness owed to stockholders of 10 percent or more of the companies' outstanding stock. The inclusion of these moneys was authorized by G.L.1956 (1970 Reenactment) § 44–11–4 and § 44–11–16, as amended by P.L.1974, ch. 200, art. 2, § 1, *Regulation Re: Net Worth*, and *Regulation Re: Consolidated Returns*, of the January 20, 1977 Rules and Regulations of the Tax Administrator.

The relevant sections of these statutes and regulations, as they existed at the time, provide as follows:

"44–11–4. Returns of affiliated groups of corporations.—An affiliated group of corporations may file a consolidated return for the taxable year in lieu of separate returns; provided, that all the corporations which constitute such affiliated group at any time during the period for which the return is made and which are subject to taxation under this chapter shall consent to the making of such consolidated return. The tax administrator may prescribe such rules and regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, liable to taxation under this chapter, both during and after the period of affiliation, may be determined, computed, assessed, collected and adjusted in such manner as clearly to reflect the net income and the corporate excess and to prevent avoidance of tax liability." [1]

"44–11–16. Determination of net worth. —(a) 'Net worth' shall mean the aggregate of the values disclosed by the books of the corporation for * * * (5) the amount of all indebtedness owing directly or indirectly to holders of ten percent (10%) or more of the aggregate outstanding shares of the taxpayer's capital stock of all classes, as of the close of the taxable year * * *. [2]

"REGULATION RE: NET WORTH

\*　　\*　　\*　　\*　　\*　　\*

II. INDEBTEDNESS INCLUDIBLE IN NET WORTH

(a) 'Indebtedness owing directly or indirectly' includes, but is not limited to, all indebtedness owing to any stockholder or shareholder and to members of his immediate family, where a stockholder and member of his immediate family, together or in the aggregate, own or beneficially own 10% or more of the aggregate number of outstanding shares of the taxpayer's capital stock of all classes.

\*　　\*　　\*　　\*　　\*　　\*

(e) 'Indebtedness' is not limited in scope by the duration thereof and therefore includes all debts due, whether money, goods or services, including, inter alia, accruals of salaries, bonuses and dividends, as well as interest accrued on all indebtedness."

"REGULATION RE: CONSOLIDATED RETURNS

\*　　\*　　\*　　\*　　\*　　\*

VI. *Consolidated net income and net worth.*—

\*　　\*　　\*　　\*　　\*　　\*

(b) Consolidated net worth: The consolidated net worth of the affiliated group, which makes a consolidated return for any taxable year, shall be the aggregate of the net worth apportioned to this state of each of the members of such group, computed without eliminations of any kind between members or nonmembers of such group. This computation is as follows. Each member's net worth is separately apportioned to

---

**1.** "Corporate excess" is deemed to mean "net worth." Public Laws 1974, ch. 200, art. 2, § 2(a), codified at G.L.1956 (1980 Reenactment) § 44–11–16.1.

**2.** By an act effective July 1, 1988, the General Assembly repealed G.L.1956 (1970 Reenactment) § 44–11–16 as amended by P.L.1974, ch. 200, art. 2, § 1 in its entirety. P.L.1988, ch. 12, § 2. However, the 1977 and 1978 tax returns of petitioners are unaffected by this change.

this state and then their apportioned amounts are aggregated."

In 1978 petitioners again filed a consolidated-business-corporation return and listed their net worth as $1,302,468.79 with a state tax of $7,959.66. The tax division recomputed the net worth at $3,729,979.53 pursuant to the above statutory provisions. The increased net worth again resulted from the tax administrator's inclusion of indebtedness owing 10–percent stockholders, which effectuated a corresponding increase in state taxes.

The petitioners requested a hearing with respect to the 1977 tax return, which was granted pursuant to G.L.1956 (1977 Reenactment) § 42–35–9. Following this hearing, the tax administrator upheld the recomputation in a final decision rendered April 23, 1982.

The petitioners also requested a hearing with respect to the 1978 recomputation of net worth. The request was granted, and once again the tax administrator upheld the tax in a final decision, incorporating the March 1982 recommendation of the assigned hearing officer into the April decision. In both instances, the tax administrator found that "the inclusion of all debt owed directly or indirectly to stockholders of ten percent (10%) or more of the aggregate outstanding share[s] was proper."

Accordingly, petitioners appealed the two administrative decisions to the District Court. By agreement of the parties, the administrative appeals were consolidated because they involved a common question of law. At first the District Court for the Sixth Division dismissed the appeals in March 1984 for failure to comply with the notice provision of § 42–35–15(b). Subsequent to this dismissal by the District Court, petitioners filed a writ of certiorari, which this court granted. We quashed the dismissal, and the merits of the administrative appeals were heard in the District Court. On rehearing, the trial court held that the regulations in question were valid and that the tax division properly recomputed petitioners' net worth to include the indebtedness owed to stockholders owning 10 percent of the outstanding shares. For the following reasons we affirm.

I

Section 44–11–4 provides the tax administrator with the authority to promulgate rules and regulations to effectuate the collection of income taxes reflective of net income and to prevent the avoidance of tax liability. Pursuant to this authority, the tax administrator promulgated *Regulation Re: Consolidated Returns* VI(b), which articulated a formula for the computation of consolidated net worth. It is this specific regulation that petitioners contend is improper. Great American asserts that this regulation exceeds the authority given to the tax administrator under § 44–11–4, destroys the right to file a consolidated return, and is therefore unconstitutional under article IV, section 2, of the Rhode Island Constitution. This section of our State Constitution, however, now applies to elections, and we believe that petitioners intended to argue that *Regulation Re: Consolidated Returns* violates article VI, section 2, of the Rhode Island Constitution. It is article VI, section 2, that presently sets out the bicameral requirement for legislative enactments. R.I. Const. art. VI, § 2. We find that the regulation at issue does not exceed the tax administrator's authority, nor does it violate our State Constitution.

Initially we acknowledge the existing dichotomy of administrative regulations. *Lerner v. Gill*, 463 A.2d 1352, 1358 (R.I.1983). Administrative rules are divided into two classifications: legislative rules and interpretive rules. *Id.; see also Henry v. Earhart*, 553 A.2d 124, 126–27 & 126–27 n. 1 (R.I.1989) (citing *Lerner v. Gill*, 463 A.2d 1352 (R.I.1983)). Legislative rules are promulgated pursuant to the specific statutory authority provided by the Legislature. *Lerner v. Gill*, 463 A.2d at 1358 (rule is product of delegated legislative power). Conversely, an interpretive rule is not specifically authorized by a legislative enactment; rather, it is promulgated by an administrative agency for the purposes of guidance and definition. *General Electric*

*Co. v. Gilbert,* 429 U.S. 125, 141–42, 97 S.Ct. 401, 411, 50 L.Ed.2d 343, 357–58 (1976) (quoting *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124, 129 (1944)). The distinction is important because an administrative regulation that is characterized as a legislative rule has the force and effect of law. *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977); *see Lerner v. Gill,* 463 A.2d at 1358; *see also Mullins v. Bordeleau,* 517 A.2d 600, 603 (R.I.1986). Furthermore, a presumption of validity attaches to a legislative rule that a challenger must rebut. *Henry v. Earhart,* 553 A.2d at 126–27 & 126–27 n. 1; *see also American Hoechst Corp. v. Norberg,* 462 A.2d 369, 372 (R.I.1983). An interpretive rule enjoys no such presumption, and moreover, a court considering enforcement of such a rule may substitute its own judgment for that of the administrative agency's judgment. *Lerner v. Gill,* 463 A.2d at 1358.

■ With these distinctions in mind, it is clear that *Regulation Re: Consolidated Returns* may be categorized as a legislative rule. Rhode Island General Laws specifically authorized the tax administrator to promulgate all necessary rules and regulations for the orderly collection of taxes due the state. Section 44–11–4. Thus, this regulation, enacted pursuant to a proper legislative delegation, has the force and effect of law and enjoys a presumption of validity. The petitioners have offered no support to rebut this presumption and make a bare assertion that the regulation is an "unwarranted delegation of legislative power." We therefore find that *Regulation Re: Consolidated Returns* is a valid exercise of legislatively delegated authority.

## II

■ The second issue for consideration is whether the tax administrator properly recomputed petitioners' net worth to include indebtedness owing 10–percent stockholders as provided for by § 44–11–16(a)(5) as it existed in 1977 and 1978.[3] When reviewing an administrative appeal, we are confined to questions of law based upon the record before us. *Powell v. Dept. of Employment Security,* 477 A.2d 93, 95 (R.I.1984). Only when the factual findings of an administrative agency are completely devoid of competent evidence may this court reverse the agency. *Id.*

■ In this light we consider petitioners' contention that § 44–11–16(a)(5) does not apply to situations in which the indebtedness is owing between and among consolidated subsidiaries and its parent corporation. The petitioners direct our attention to *Regulation Re: Net Worth* II(a), which employs such language as "shareholder[s] and to members of his immediate family." Relying upon these terms, petitioners assert that the indebtedness must be owed to a 10–percent stockholder who is also a natural person. We cannot subscribe to this assertion.

Any judicial attempt at statutory interpretation is controlled by our maxim that the plain and ordinary language of the legislation be given effect. *Mullins v. Bordeleau,* 517 A.2d at 604. Section 44–11–16(a)(5) plainly calls for inclusion in net worth of all indebtedness owing 10–percent stockholders. The statute does not particularize the form such a stockholder must take. Thus the petitioners are forced to rely upon a single clause in *Regulation Re: Net Worth* II(a) to support their position. However, *Regulation Re: Net Worth* II(a) is composed of several clauses promulgated to define § 44–11–16(a) further, such as " '[i]ndebtedness owing directly or indirectly' *includes,* but is not limited to, all indebtedness owing to *any* stockholder or shareholder and to members of his immediate family." (Emphasis added.) *Regulation Re: Net Worth* II(a). This regulation was obviously drafted so that 10–percent

---

**3.** Both parties cite the New Jersey Supreme Court case of *Fedders Financial Corp. v. Director, Div. of Taxation,* 96 N.J. 376, 476 A.2d 741 (1984). *Fedders* is instructive in that it proscribes a per se rule of inclusion regardless of the debt's source. *Id.* at 392, 476 A.2d at 749. It is inapplicable to the case at bar, however, which considers indebtedness owing between and among subsidiaries and their parent corporation and not an unrelated third party.

shareholders could not avoid including indebtedness in net worth by spreading the stock to and among other members of the family. However, the regulation clearly reads that the indebtedness is not limited to these situations. In no way does the statute or this regulation proscribe the inclusion of debt owed to 10–percent corporate stockholders. The regulation specifies *any* stockholder. Additionally, our General Laws provide that a corporation is empowered to purchase and own stock. G.L. 1956 (1985 Reenactment) § 7–1.1–4(7). Therefore, a corporate stockholder falls squarely within the ambit of § 44–11–16(a)(5) and *Regulation Re: Net Worth* II(a). Thus, the resulting inclusion of the indebtedness owing 10–percent stockholders was not clearly erroneous, nor were the decisions of both the tax administrator and the District Court.

Accordingly Great American's petition for certiorari is denied, and the decision of the District Court is affirmed. The writ heretofore issued is quashed, and the papers in this case are remanded to the District Court with our decision endorsed thereon.

KELLEHER, J., did not participate.