Edgar **ALLARD**

v.

**DEPARTMENT OF TRANSPORTATION and Thomas Harrington, Deputy Director of Motor Vehicles.**

**No. 91–84–M.P.**

Supreme Court of Rhode Island.

May 13, 1992.

Patricia Andrews, Thomas McAndrew, Providence, for plaintiff.

F. Thomas O'Halloran, Eugene Coulter, Dept. of Transp., Providence, for defendant.

## OPINION

FAY, Chief Justice.

The petitioner, Edgar Allard, seeks review by writ of certiorari of a decision by the respondent, Rhode Island Department of Transportation (DOT), as affirmed by the District Court, whereby the petitioner's application to renew his chauffeur's license to operate a motor vehicle was denied. The petitioner claims that the District Court's decision was in error because (1) § 391.-41(b)(10) of title 49 of the Code of Federal Regulations, otherwise known as the Federal Motor Carrier Safety Regulations (federal safety regulations), was not properly adopted by the DOT and therefore is not applicable to the petitioner, (2) the petitioner was not afforded an opportunity to present evidence of his ability to operate a motor vehicle safely, (3) the revocation of the petitioner's license to operate a motor vehicle was violative of the petitioner's constitutional rights, and (4) the petitioner should have been, at the very least, allowed to operate a motor vehicle intrastate. For the reasons stated herein, we grant the petitioner's petition in part and affirm the decision of the District Court in part and remand for further proceedings.

The petitioner has held a chauffeur's license since 1955. In 1962 petitioner suffered an injury to his left eye. As a result of the injury, the scope of petitioner's vision in his left eye was reduced from 20/20 (Snellen) to 20/100 (Snellen). Nevertheless, petitioner continues to function with binocular vision and has maintained an unblemished driving record since 1955.

Pursuant to G.L.1956 (1982 Reenactment) § 31–23–1, as amended by P.L. 1986, ch. 282, § 1, the DOT promulgated the provisions of the federal safety regulations. Thereafter on July 29, 1986, the DOT published in The Providence Journal–Bulletin, a newspaper of general circulation, a notice of intention to adopt the federal safety regulations. On September 9, 1986, the DOT filed the adopted regulations with the office of the Secretary of State, which became effective twenty days thereafter.

On January 20, 1989, petitioner sought to renew his chauffeur's license. He was informed by the DOT that in order to do so, he must satisfy the vision requirements set forth in 49 C.F.R. § 391.41(b)(10) of the federal safety regulations.[1] However, as a

---

1. Section 391.41 of 49 C.F.R. states in pertinent part:

"(a) A person shall not drive a motor vehicle unless he is physically qualified to do so * * *.

(b) A person is physically qualified to drive a motor vehicle if that person—

\* \* \* \* \*

(10) Has distant visual acuity of at least 20/40 (Snellen) in each eye without corrective lenses or visual acuity separately correct-

result of the injury petitioner sustained to his left eye, the DOT's medical advisory board concluded that petitioner was unable to satisfy the minimum requirements set forth in 49 C.F.R. § 391.41(b)(10). Consequently, petitioner's application for renewal of his chauffeur's license was denied.

On April 12, 1989, petitioner filed a timely appeal of the DOT's decision. On June 23, 1989, a hearing was conducted before the chief hearing officer whereby the decision of the medical advisory board was upheld. During the hearing petitioner was not allowed to present evidence regarding his ability to operate a motor vehicle safely despite having failed to satisfy the vision requirements of 49 C.F.R. § 391.41(b)(10).

On July 12, 1989, Thomas Harrington, deputy (DOT) director, upheld the decision of the chief hearing officer. On July 20, 1989, petitioner filed an appeal of the DOT's decision with the District Court.[2]

On February 14, 1991, following its conclusion that petitioner's failure to satisfy the vision requirements of 49 C.F.R. § 391.41(b)(10) required the automatic revocation of his license, the District Court affirmed the DOT's decision. On March 4, 1991, an order was entered staying the District Court's decision pending an appeal to this court. Thereafter, petitioner filed a petition for a writ of certiorari, which was granted on March 28, 1991.[3]

I

The petitioner initially avers that he should not have been subject to the physical requirements set forth in 49 C.F.R. § 391.41(b)(10). In support, petitioner asserts that the DOT did not adhere to the requirements of the Administrative Procedures Act (APA), as set forth in G.L.1956 (1988 Reenactment) chapter 35 of title 42, when it sought to adopt the federal safety regulations. The petitioner claims that the DOT failed to publish or to make available the adopted federal safety regulations for public inspection as required by § 42–35–2(b). Specifically § 42–35–2(b) provides, "No agency rule, order, or decision is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection" as required by the APA. The petitioner contends that the DOT's purported failure to adhere to the requirements of the APA excuses him from the purview of the requirements set forth in 49 C.F.R. § 391.41(b)(10).

General Laws 1956 (1982 Reenactment) § 31–2–4, as amended by P.L.1987, ch. 398, § 1 authorizes the assistant director for motor vehicles to adopt and enforce all necessary rules and regulations to implement the provisions of chapters 1 through 27 of title 31 pertaining to the operation of vehicles on the state's roadways. In addition, with respect to the application for renewal of a license, § 31–10–30, as amended by P.L.1984, ch. 439, § 2 provides that the Registrar of Motor Vehicles may require an examination of the applicant and is authorized to adopt rules and regulations necessary to carry out the purposes stated therein. In enacting any such rules and regulations, the DOT, as an administrative agency, is subject to all the provisions contained in the APA. *Larue v. Registrar of Motor Vehicles,* 568 A.2d 755 (R.I.1990); *Considine v. Department of Transportation,* 564 A.2d 1343 (R.I.1989).

---

ed to 20/40 (Snellen) or better with corrective lenses, distant binocular acuity of at least 20/40 (Snellen) in both eyes with or without corrective lenses, field of vision of at least 70 [degrees] in the horizontal Meridian in each eye, and the ability to recognize the colors of traffic signals and devices showing standard red, green, and amber * * *."

**2.** General Laws 1956 (1988 Reenactment) § 42–35–15 provides in part: "(a) Any person who has exhausted all administrative remedies available to him within the agency * * * is entitled to judicial review * * *."

Section 42–35–15.1 provides in part: "(a) Appeals from decisions by administrative agencies of the state or officers thereof shall be taken to the * * * district court as provided by the general laws in respect to each agency * * *."

**3.** Section 42–35–16 provides in part: "Any party in interest, if aggrieved by a final judgment of the * * * district court * * * may, within twenty (20) days from the date of entry of the judgment, petition the supreme court of the state of Rhode Island for a writ of certiorari to review any questions of law * * *."

The proper procedure for adopting rules and regulations after they have been promulgated is provided for in §§ 42–35–3 and 42–35–4. Specifically, § 42–35–3 states in pertinent part:

"(a) Prior to the adoption, amendment, or repeal of any rule the agency shall: (1) Give at least twenty (20) days' notice of its intended action. * * * The notice shall be mailed to all persons who have made [a] timely request of the agency for advance notice of its rule-making proceedings, and published in a newspaper * * * having * * * general circulation throughout the state * * *."

After the requirements of § 42–35–3 are satisfied, § 42–35–4 provides for the filing of adopted regulations with the office of the Secretary of State and states in pertinent part: "(a) Upon adoption of a rule each agency shall file * * * in the office of the secretary of state a certified copy of each such rule. * * * (b) Each rule hereafter adopted is effective twenty (20) days after filing * * *."

■ Pursuant to the requirements set forth in § 42–35–3, on July 29, 1986, the DOT did in fact publish a notice of intention to adopt the federal safety regulations. Further, the DOT filed the adopted regulations with the office of the Secretary of State on September 9, 1986. Accordingly the foregoing federal safety regulations became effective September 29, 1986.

We note that "[a]dministrative rules are divided into two classifications: legislative rules and interpretive rules." *Great American Nursing Centers, Inc. v. Norberg,* 567 A.2d 354, 356 (R.I.1989). "Legislative rules are promulgated pursuant to the specific statutory authority provided by the Legislature." *Id.* (citing *Lerner v. Gill,* 463 A.2d 1352, 1358 (R.I.1983)). Interpretive rules are not specifically authorized by a legislative enactment; rather they are promulgated for the purposes of guidance and definition. 567 A.2d at 356–57 (citing *General Electric Co. v. Gilbert,* 429 U.S. 125, 141–42, 97 S.Ct. 401, 411, 50 L.Ed.2d 343, 357–58 (1976)). The distinction is significant because "an administrative regulation that is characterized as a legislative rule has the force and effect of law." 567 A.2d at 357 (citing *Batterton v. Francis,* 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977)). With the distinctions between legislative and interpretive rules in mind, we feel that it is clear that the provisions contained within the federal safety regulations as adopted by the DOT may be characterized as legislative rules. As indicated, the DOT did in fact adhere to the requirements of the APA in adopting the provisions of the federal safety regulations. The adopted regulations thereby carry with them the force and effect of law. The petitioner is therefore not excused from the purview of the vision requirements set forth in 49 C.F.R. § 391.41(b)(10).

## II

The petitioner also claims that the DOT had discretion regarding the application of the vision requirements of 49 C.F.R. § 391.-41(b)(10). Accordingly petitioner argues that he should have been allowed to present evidence of his ability to operate a motor vehicle safely despite his failing eyesight. Conversely the DOT argues that it does not have the discretionary power to grant exemptions to the requirements of 49 C.F.R. § 391.41(b)(10). Hence petitioner's failure to meet the minimum vision standards set forth therein required the automatic denial of petitioner's renewal application without an individual assessment of petitioner's compensating strengths.

■ The extent of this court's review of causes of action stemming from the APA is limited by § 42–35–16 and is restricted to a review of the record for errors of law. *Hometown Properties, Inc. v. Department of Environmental Management,* 592 A.2d 841, 843 (R.I.1991); *see also Berberian v. Department of Employment Security,* 414 A.2d 480 (R.I.1980). "We do not weigh the evidence, however, we merely search for any legally competent evidence that supports the decision under review." *Berberian,* 414 A.2d at 482. Further, just as the first level of judicial review must conform to the standards set forth in § 42–

35–15, our review must conform to the same standards. *Id.* at 482 n. 2.[4]

In affirming the DOT's decision, the District Court concluded that the DOT did not have the discretionary power to grant exemptions to the requirements of 49 C.F.R. § 391.41(b)(10) and that the DOT need not make an individual assessment of petitioner's compensating strengths prior to denying petitioner's application for renewal of his chauffeur's license. In doing so, the court relied on the case of *Starr v. Federal Aviation Administration*, 589 F.2d 307 (7th Cir.1978).

In *Starr* the court upheld a Federal Aviation Administration (FAA) rule that imposed a mandatory retirement age of sixty years for all pilots without providing for individual assessments with respect to a licensee's compensating strengths. The court noted that the legislative delegation of power to the FAA as contained in "[s]ection 601 of the Federal Aviation Act, 49 U.S.C. § 1421(c), empowers the FAA administrator to grant exemptions from FAA safety regulations governed by title VI of the act. It states, 'The Administrator from time to time may grant exemptions from the requirements of any rule or regulation prescribed under this subchapter if he finds that such action would be in the public interest.'" *Starr*, 589 F.2d at 310. However, despite the delegated discretionary power to grant exemptions, the court further concluded:

> "[t]he FAA has the discretionary power to establish a policy that there will be *no exemptions* granted until it is satis-

fied that medical standards can demonstrate an absence of risk factors in an individual sufficient to warrant a more liberal application of the Age 60 Rule. Until the FAA determines that such standards exist, it may adhere inflexibly to a rule whose validity has been upheld by the courts and whose policies were reevaluated and articulated to the Senate in 1972 and 1977, as long as it continues to consider new advances in medical technology." (Emphasis added.) *Id.* at 314.

With respect to the instant case the statutory framework is as follows: G.L.1956 (1982 Reenactment) § 31–10–3(6), as amended by P.L.1984, ch. 196, § 2 provides that the DOT shall not issue any license "[t]o any person, as an operator or chauffeur, who is * * * to take an examination unless such person shall have successfully passed such examination."[5] In addition § 31–10–4 provides in pertinent part: "The registry upon issuing a chauffeur's license shall * * * appropriately examine each applicant according to the class of license applied for and *may impose such rules and regulations for the exercise thereof as it may deem necessary for the safety and welfare of the traveling public.*" (Emphasis added.) Accordingly § 31–10–21, as amended by P.L.1987, ch. 454, § 1 provides in part:

> "Every applicant for a license to operate a motor vehicle upon the public highways shall be required by the registry to show, by examination or otherwise, the ability to read and understand highway signs

---

**4.** Section 42–35–15(g) provides:

"The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency * * * or * * * reverse * * * the decision if substantial rights of the appellant have been prejudiced because the administrative * * * decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

**5.** It should be noted that the DOT issues three classes of chauffeur's license.

"A class 1 license is granted for the operation of a jitney, bus, schoolbus, or public livery; a class 2 license is required by anyone seeking to operate a truck having a carrying capacity in excess of five tons; a class 3 license enables its possessor to operate vehicles having a capacity of five tons or more as well as tractor trailers." *Costa v. Registrar of Motor Vehicles*, 543 A.2d 1307, 1308 (R.I.1988).

regulating, warning, and directing traffic * * * and such other qualifications as will demonstrate that such applicant is a proper and safe person to operate a motor vehicle upon the public highways. *Such examination shall include a test of [the] applicant's eyesight."* (Emphasis added.)

Last, § 31–10–30, as amended by P.L.1984, ch. 439, § 2 provides for the expiration and renewal of licenses and states in pertinent part:

"The registrar of motor vehicles, having good cause to believe the applicant for renewal is incompetent or otherwise not qualified, may require an examination of the applicant as upon an original application. [*See* § 31–10–21.] *The registrar of motor vehicles is hereby authorized to adopt any regulations necessary to carry out the purposes of this section.*" (Emphasis added.)

As noted previously, pursuant to the authority granted to the DOT in § 31–10–30, the DOT properly adopted the federal safety regulations of which 49 C.F.R. § 391.-41(b)(10) is a part.

With the relevant statutory framework before us, it is apparent that *Starr* differs from the instant case such that the statutory delegation of authority given to the FAA administrator in *Starr* expressly granted the discretionary power to grant exemptions to its rules. However, the same cannot be said with respect to the grant of authority by the Legislature to the DOT in the instant case. Indeed we are unable to locate any reference to any such discretionary powers in the provisions of the relevant statutes. Furthermore, whereas the court in *Starr* found, within the explicit delegation of discretionary power to grant exemptions, the implicit power to refrain from granting exemptions, in the instant case it is the absence of such an explicit delegation of power that effectively acts to preclude the DOT from adopting anything other than a nonexemption policy.

The petitioner also relies on *California School Employees Association v. Department of Motor Vehicles,* 203 Cal.App.3d 634, 250 Cal.Rptr. 50 (1988), which also examines the ability of a license holder to present evidence of his ability to drive safely despite failing to satisfy the requirements of 49 C.F.R. § 391.41(b)(10).

In *California School Employees Association,* the Department of Motor Vehicles (DMV) in Cal.Code Regs., title 13, § 100.18, adopted 49 C.F.R. § 391.41(b)(10) of the federal safety regulations. In addition, Cal.Code Regs. title 13, § 1208 set forth two categories for denying or revoking licenses. 203 Cal.App.3d at 642, 250 Cal. Rptr. at 54. Subdivision (a) of § 1208 lists the mandatory grounds for the denial or revocation of licenses. Subdivision (b) lists the discretionary grounds for the denial or revocation of licenses and states: *"Discretionary.* DMV *may* deny, [ ] suspend, or revoke a school bus * * * driver certificate for any of the following causes when the applicant or certificate holder: * * * (10) Does not meet the minimum medical standards set forth by DMV in Section 100.18 * * * of this title." 203 Cal.App.3d at 641, 250 Cal.Rptr. at 53.

Thereafter the appellant sought to renew his schoolbus driver's certificate. However, because appellant suffered from a condition known as lazy eye, he was unable to satisfy the vision requirement of 49 C.F.R. § 391.41(b)(10) as adopted in Cal. Code Regs. title 13, § 100.18. Consequently the appellant had his certificate revoked without an opportunity to present any evidence regarding his ability to compensate for his visual shortcomings.

Relying upon the specific unambiguous statutory language contained in Cal.Code Regs. title 13, § 1208, subdivisions (a) and (b), the court ruled that the DMV may exercise its discretion whether to deny, to suspend, or to revoke a schoolbus driver's certificate when an applicant does not meet the medical requirements set forth in 49 C.F.R. § 391.41(b)(10). 203 Cal.App.3d at 645, 250 Cal.Rptr. at 56. Thus the court concluded that the appellant's failure to meet the standards contained therein did not warrant the automatic disqualification of his schoolbus driver's certificate, or preclude the DMV's consideration of the appellant's ability to compensate for his visual

deficiencies. *Id.* Rather the court held that revocations and denials falling within the purview of § 1208(b) may be decided on a case-by-case basis. The court noted that had the DMV desired a mandatory, no-exemption policy, it could have easily substituted "Mandatory" for "Discretionary" and "shall" for "may" with respect to § 1208. *Id.*

For reasons similar to those discussed previously with respect to *Starr*, here too the instant case is readily distinguishable. In *California School Employees Association,* the California Legislature expressly and unambiguously delegated to the DMV the discretionary power to revoke or deny licensing applications. The very language allowed for the presentation and consideration of extrinsic factors. However, as was demonstrated previously, such is not the case with respect to the grant of authority in the instant case. The provisions of the relevant statutes fail to provide even a hint of discretionary power given to the DOT.

The petitioner argues last that this court's ruling in *Costa v. Registrar of Motor Vehicles,* 543 A.2d 1307 (R.I.1988), requires that an individual assessment must always be made before a license can be revoked. In *Costa* a schoolbus driver who had suffered from seizures and blackouts had his license to operate a schoolbus suspended pursuant to G.L.1956 (1982 Reenactment) § 31–11–7(a)(5) as amended by P.L.1986, ch. 494, § 3.[6] This court noted:

> " '[I]n order to support the administrative denial or withdrawal of driving privileges upon the statutory ground of physical disability, there must be competent, substantial evidence of the existence of some tangible disease or defect which bears, or could in the future bear, adversely upon the particular motorist's capacity to drive safely.' " 543 A.2d at 1310.

Further, we noted that in addressing license suspensions based upon physical or mental disabilities,

> "[c]ourts have considered a number of factors that bear on an allegedly impaired driver's ability to drive safely. These include the operators past driving record; his or her medical history, especially the frequency of recurrences of blackouts or seizures, and the controllability of such recurrent episodes through medication; the operator's ability to predict or anticipate an episode in which he or she might lose consciousness; his or her ability to compensate for a physical defect in other ways; and the hardship that denial or suspension would cause." *Id.*

Specifically it is the foregoing recognition of the need to consider extrinsic factors that serves as the basis for petitioner's contention that *Costa* stands for the proposition that the DOT must consider such factors in all actions involving the revocation, denial, or suspension of an operator's license. However, in *Costa* we note that the plaintiff's license was suspended pursuant to § 31–11–7(a)(5) whereas in the instant case petitioner's application for renewal of his license was denied pursuant to § 31–10–30. Further, *Costa* deals with a physical disability in which the DOT has not adopted any specific rules or regulations whereas in the instant case the DOT, through the express authority granted to it in § 31–10–30, adopted 49 C.F.R. § 391.41(b)(10) and set forth specific standards relating to an operator's vision requirements. In *Costa* our recognition of the need to consider extrinsic factors stems not only from the absence of enacted rules and regulations governing disabilities like seizures but also from the very nature of the disability itself. Indeed, because of the lack of adoptable standards governing disabilities of this type, it becomes incumbent upon the DOT to decide such actions on a

---

**6.** General Laws 1956 (1982 Reenactment) § 31–11–7(a)(5), as amended by P.L.1986, ch. 494, § 3 provides: ·

  "The registry is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by

its records or other sufficient evidence that the licensee: * * *

  (5) Is incompetent by reason of physical or mental disability to drive a motor vehicle with safety upon the highways."

case-by-case basis. The same is not true with respect to the facts before us. Inherent in the area of visual disabilities is the ability to set and adopt specific minimum standards of conformance. The failure to satisfy the enumerated standards operates as a disqualification per se.

■ Consequently, absent an express delegation of discretionary power to grant exemptions and given the nature of petitioner's disability and the existence of readily identifiable standards of compliance, the DOT was indeed correct in adhering inflexibly to a nonexemption policy with respect to the denial of petitioner's application for renewal of his chauffeur's license. The DOT therefore acted properly in denying petitioner's application without regard for any evidence of petitioner's ability to compensate for his visual shortfall. Whereas we acknowledge petitioner's concern for continued employment, our primary concern in this matter is for the safety and welfare of those individuals who utilize the state's roadways. Accordingly, we are of the opinion that the trial judge's decision was not in error and was in fact supported by legally competent evidence.

### III

■ The petitioner next avers that the DOT's refusal to renew his chauffeur's license results in the denial of his constitutional right to work. The due process clause of the Fifth Amendment to the United States Constitution, as made applicable to the states through the Fourteenth Amendment, provides that no state shall deprive any person of "life, liberty, or property, without due process of law." Article 1, section 2, of the Rhode Island Constitution provides the same.

"Liberty, as meant by the clause is a broad concept including not only freedom from bodily restraint but also the right * * * to engage in any of the common occupations of life * * *." *In re Advisory Opinion to the House of Representatives,* 519 A.2d 578, 581 (R.I.1987); *see also Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706–07, 33 L.Ed.2d 548, 558 (1972). Hence, the gravamen of peti-

tioner's argument is that the denial of his right to operate a motor vehicle is in effect a denial of his constitutional right to liberty such that he is no longer free "to engage in any of the common occupations of life."

We have recognized that

"[w]here the legislation infringes upon explicit constitutional rights * * * or upon interests fundamental to our society of ordered liberty, such as the right to travel or to privacy * * * legislative enactments must be narrowly drawn to express only a compelling state interest. * * * But where no such guarantee or fundamental interest is infringed on by state legislation, and where the states legislative aim is to promote the health and safety of its citizens—an aim at the core of its police power—the challenger, to prevail under the due process clause, must demonstrate that there is no rational connection between the enacted regulation and the legislative aim." 519 A.2d at 582.

Further, we have recognized that:

"The use of the automobile as a necessary adjunct to the earning of a livelihood in modern life requires us in the interest of realism to conclude that the right to use an automobile on the public highways partakes of the nature of a liberty within the meaning of the constitutional guarantees of which the citizen may not be deprived without due process of law." *Berberian v. Lussier,* 87 R.I. 226, 231, 139 A.2d 869, 872 (1958).

However, this court has expressly ruled that the right to operate a motor vehicle on the public highways is not a fundamental right. *Berberian v. Petit,* 118 R.I. 448, 455 n. 9, 374 A.2d 791, 794 n. 9 (1977).

As indicated, § 31–10–4 provides for the classification and examination of chauffeurs and provides that the DOT "may impose such rules and regulations * * * as it may deem necessary for the safety and welfare of the traveling public." Pursuant to this delegated authority, the DOT adopted 49 C.F.R. § 391.41(b)(10) of the federal safety regulations. In order to show that the adoption of 49 C.F.R. § 391.-41(b)(10) is violative of due process clauses

of both the Federal and the State Constitutions, petitioner bears the burden of demonstrating that there is no rational connection between the enacted regulation and the legislative aim. However, petitioner has not satisfied his burden. Further we believe that the visual requirements of 49 C.F.R. § 391.41(b)(10) do in fact bear a logical and rational relation to the legislative aim of protecting the public's safety and welfare on the state's roadways.

## IV

Last, petitioner asserts that the federal regulatory scheme upon which the DOT relied in denying the renewal of his chauffeur's license provides an exemption for intrastate driving. The petitioner therefore claims that despite the DOT's refusal to renew his chauffeur's license, petitioner should have been allowed to operate a motor vehicle, at the very least, intrastate.

When the DOT adopted 49 C.F.R. § 391.41(b)(10) regulating the minimum medical standards for licensing operators of motor vehicles, it also adopted the federal exemptions to that regulation. Sections 390.16, 390.33, and 1048.101 of title 49 of the Code of Federal Regulations provide exemptions relating to the "intracity operation" of motor vehicles. *See generally Smith v. Department of Motor Vehicles*, 163 Cal. App.3d 321, 209 Cal.Rptr. 283 (1984). In addition 49 C.F.R. § 391.71(b) states:

"[t]he provisions of *§ 391.41(b)(10)* (relating to minimum visual requirements), do not apply to a driver who was a regularly employed driver (as defined in § 395.2(f) of this subchapter) as of July 1, 1975, and continues to be a regularly employed driver of that motor carrier and who drives a vehicle that: (1) Is a truck (as defined in § 390.4 of this subchapter), and (2) Is operated in a retail delivery service, and (3) Is transporting combustible liquids (as defined in § 173.115 of this title), and (4) Is operated in intrastate commerce." (Emphasis added.)

■ The absence of any transcription either from the hearings conducted before the DOT or from the District Court leaves this court without any evidentiary findings concerning the nature of the petitioner's operation of a motor vehicle. Although the DOT is not required to hold an evidentiary hearing concerning the petitioner's ability to operate a motor vehicle safely despite failing to satisfy the requirements of 49 C.F.R. § 391.41(b)(10), the DOT's decision cannot be finalized without a prior determination of whether the petitioner's driving is within the purview of any of the applicable exemptions to that regulation.

For the reasons heretofore stated, the petitioner's petition for certiorari is granted. The judgment of the District Court is affirmed in part, and the papers of the case are remanded to the District Court with directions to remand to the DOT for further proceedings in accordance with this opinion.