**V.J. DAWAR, Movant,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Respondent.**

**Mona DAWAR, Movant,**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Respondent.**

Nos. 92–MC–242–0, 92–MC–243–0.

United States District Court, D. Kansas.

April 6, 1993.

Robert A. Olsen, Kansas City, KS, for respondent.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on motions by V.J. Dawar and Mona Dawar, pursuant to the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401–3422 ("Financial Privacy Act"), to quash the administrative subpoenas *duces tecum* issued by the Office of the Inspector General ("OIG") of the United States Department of Housing and Urban Development ("HUD"). The Inspector General has filed a cross motion for an order enforcing the subpoenas. For the reasons set forth below, the Dawars' motions will be denied and the Inspector General's motion will be granted.

V.J. Dawar was involved in the operation of French Village Apartments, a HUD-regulated property ("the HUD project"), from July 1987 to January 1990. Pursuant to the HUD regulatory agreement, project funds could only be used to pay reasonable operating expenses and to make necessary repairs unless the project generated "surplus cash." [1] In October 1992, the OIG initiated an investigation into possible misappropriations of $89,000 which was improperly withdrawn and $214,000 which was inadequately documented in relation to the HUD project. As part of that investigation, the OIG issued subpoenas requiring disclosure of financial information relating to accounts maintained by or transactions for the benefit of V.J. Dawar, Mona Dawar (V.J. Dawar's wife), and the Dawar's personal residence, 13004 W. 76th Terrace, Shawnee Mission, Kansas. The subpoenas encompass the period from six months preceding V.J. Dawar's operation of the HUD project to the present.

The Dawars contend that the subpoenas are overbroad because they require disclosure of financial information for time periods when V.J. Dawar was not even involved with the HUD project. They contend the subpoe-

Susan M. Hunt, Molly Korth, James M. Ramsey, Kansas City, MO, for movants.

---

1. "Surplus cash" was any unrestricted cash remaining after the payment of the mortgage and all other obligations of the project, including the funding of Reserve for Replacements, tenant security accounts, and any other special funds required to be maintained by the project.

nas are prohibited by the Financial Privacy Act because they cannot be reasonably related to a legitimate law enforcement inquiry[2] by the OIG into the HUD project when they involve time periods outside Dawar's involvement with the project. *See* 12 U.S.C. §§ 3402(1), 3405, 3410.

■ We disagree. Government agencies are given considerable discretion in seeking information relevant to legitimate law enforcement investigations. *See, e.g., Endicott Johnson Corp. v. Perkins,* 317 U.S. 501, 509, 63 S.Ct. 339, 343, 87 L.Ed. 424 (1943) (The court is obliged to enforce an administrative subpoena unless it is "plainly incompetent or irrelevant to any lawful purpose" of the agency.); *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 214, 66 S.Ct. 494, 508, 90 L.Ed. 614 (1946) (Agencies are generally granted broad deference in determining the scope of their investigative authority.); *United States v. Westinghouse Elec. Corp.,* 788 F.2d 164, 170–71 (3d Cir.1986).

■ The Financial Privacy Act does not prohibit disclosure by a financial institution of a customer's financial records pursuant to an administrative subpoena or summons so long as: 1) the requested records are reasonably described (12 U.S.C. § 3402); 2) there is reason to believe that the requested records are "relevant to a legitimate law enforcement inquiry" (*id.* at § 3405(1)); and 3) the agency gives the financial institution's customer adequate notice (*id.* at § 3405(2), (3)). If these criterion are met, the court must order that the subpoenas be enforced. *See id.* at § 3410(c).

■ The time period covered by the subpoenas is reasonably related to the OIG's legitimate investigation of possible misappropriations of project funds. The OIG contends that financial information for the six months prior to July 1987, when HUD in-

sured the project and Dawar became involved in it, will enable the OIG to trace Dawar's financial transactions. The OIG also states that records since Dawar's departure from the project in 1990 to the present are necessary to determine whether Dawar has sufficient assets from which HUD could recover the missing funds. We believe that reasons submitted by the OIG establish the relevance of the subpoenaed financial documents to the OIG investigation.

■ Similarly, the Dawars' contention that the subpoenas are overbroad because they request any financial information about accounts maintained by or transactions for the benefit of Mona Dawar and the Dawar's personal residence is without merit. The financial records of Mona Dawar, as V.J. Dawar's wife, are relevant to the OIG's investigation of the possible misappropriation of funds from the HUD project. If V.J. Dawar did misappropriate funds, it is not unreasonable to hypothesize that he may have deposited those funds in his wife's account or have invested the money in his personal residence. In sum, the subpoenas are not "*unduly* bürdensome or *unreasonably* broad." *F.T.C. v. Texaco,* 555 F.2d 862, 882 (D.C.Cir.) (en banc), *cert. denied,* 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072 (1977). Accordingly, the court will order that the subpoenas be enforced.

■ The Dawars next seek to stay the enforcement of the subpoenas pending the outcome of possible criminal proceedings currently under investigation. In support, the Dawars cite numerous cases holding that civil discovery should be stayed when the required response could violate the respondent's Fifth Amendment privilege against self-incrimination. *See, e.g., United States v. Kordel,* 397 U.S. 1, 9, 90 S.Ct. 763, 768, 25 L.Ed.2d 1 (1970) (civil interrogatories

---

2. The subpoenas were clearly issued pursuant to a legitimate law enforcement investigation. Congress established Inspector General's Offices in federal agencies for the purpose of, among other things, policing the activities of the agency in order to prevent and detect fraud and abuse in the agencies' programs or operations. *See* The Inspector General Act of 1978, 5 U.S.C. app. 3 § 2. The OIG at HUD is charged with conducting and supervising HUD activities relating to the prevention and detection of fraud. *See id.* at § 4(a)(3). The OIG is authorized to have access to records which relate to HUD programs and operations. *Id.* at § 6(a)(1). The OIG has discretion to investigate matters relating to the administration of HUD programs and operations. *Id.* at § 6(a)(2). To that end, the OIG is vested with the power to subpoena documents which might reasonably contain information relevant to the investigation. *Id.* at § 6(a)(4).

stayed); *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084 (5th Cir.1979), *reh'g denied*, 611 F.2d 1026 (5th Cir.1980) (civil deposition stayed).

■ Those cases are distinguishable from the instant case because the Dawar's financial records are not protected by the Fifth Amendment. The privilege against self-incrimination protects only compelled testimonial self-incrimination by an individual. *See, Baltimore Social Servs. v. Bouknight*, 493 U.S. 549, 556–58, 110 S.Ct. 900, 905–07, 107 L.Ed.2d 992 (1990); *Fisher v. United States*, 425 U.S. 391, 401, 408, 96 S.Ct. 1569, 1576, 1579, 48 L.Ed.2d 39 (1976). The privilege does not, however, grant an individual the right to preclude disclosure of information which may ultimately prove to be incriminating. The Supreme Court in *S.E.C. v. Jerry T. O'Brien, Inc.*, stated,

> It is also settled that a person inculpated by materials sought by a subpoena issued to a third party cannot seek shelter in the Self–Incrimination Clause of the Fifth Amendment. The rationale of this doctrine is that the Constitution proscribes only *compelled* self-incrimination, and, whatever may be the pressures exerted upon the person to whom a subpoena is directed, the subpoena surely does not 'compel' anyone else to be a witness against himself.

467 U.S. 735, 742, 104 S.Ct. 2720, 2725, 81 L.Ed.2d 615 (1984) (emphasis in original) (citations omitted). In the present case, the Dawars are not being compelled to testify. Nor are they being compelled to respond to interrogatories as in *Kordel* or deposition questions as in *Wehling*. Rather, the subpoenas here compel the *financial institutions* upon which the subpoenas have been served to surrender the Dawars' financial records to the OIG. We conclude that the Dawars have no constitutional or statutory right which prohibits immediate enforcement of the subpoenas.

The court has reviewed the parties' briefs and concludes that a hearing is not necessary to the resolution of these motions. Under 12 U.S.C. § 3410(b), the court is required to decide the motions brought pursuant to the Financial Privacy Act without further proceedings unless the court is unable to resolve such motions on the basis of the parties' initial allegations and responses. The court finds that the briefs of the parties adequately set forth the facts of and the law applicable to this case to allow the court to resolve the instant motions without further proceedings. Accordingly, the Dawars' request for a hearing is denied.

IT IS THEREFORE ORDERED that the Dawars' motions (Case # 92–242–0 Doc. # 1 and Case # 92–243–0 Doc. # 1) are denied.

IT IS FURTHER ORDERED that the Inspector General's motion to enforce the subpoenas (Case # 91–242–0 Doc. # 5 and Case # 92–243–0 Doc. # 5) is granted. The financial institutions listed below are ordered to comply with the subpoenas already received by them relating to the above matter:

Merchant's Bank in Kansas City, Missouri;

Commerce Bank in Kansas City, Missouri;

Merchant's University Bank in Kansas City, Missouri;

Sun Savings in Shawnee Mission, Kansas;

Merchant's Broadway Bank in Kansas City, Missouri;

Grandview Bank and Trust (a/k/a Truman Bank and Trust) in Grandview, Missouri;

Bank IV Topeka in Topeka, Kansas;

Boatmen's First National Bank of Kansas City in Kansas City, Missouri; and

Central Bank of Kansas City in Kansas City, Missouri.