INSPECTOR GENERAL, UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Petitioner,

v.

ST. NICHOLAS APARTMENTS, T. Michael Wiley, General Partner and Managing Agent, T. Michael Wiley, Sole Proprietor, CDE Building Renovation, T. Michael Wiley, Owner, and T. Michael's Catered Affair, T. Michael Wiley, President, Respondents.

No. 96–S–26.

United States District Court,
C.D. Illinois,
Springfield Division.

Nov. 15, 1996.

Elizabeth L. Collins, Asst. U.S. Attorney, Springfield, IL, for petitioner.

Lance T. Jones, Springfield, IL, for respondents.

## *OPINION*

RICHARD MILLS, District Judge.

Did HUD send OIG to do its "dirty work?" Not so.

### I. FACTS

St. Nicholas Apartments is a multifamily housing project located in Springfield, Illinois. From February 17, 1996, to April 19, 1996, the United States Department of Housing and Urban Development's ("HUD") Inspector General performed an audit of St. Nicholas Apartments' financial activities. The stated purpose for the audit was to determine if project funds were being used in compliance with HUD's rules, regulations, and the terms of the Regulatory Agreement.[1] HUD claims, but Respondents deny, that St. Nicholas Apartments' mortgage is insured by the Secretary of HUD pursuant to Section 221(d)(4) of the National Housing Act. 12 U.S.C. § 1715*l*(d)(4).

HUD selected St. Nicholas Apartments to be audited as part of HUD's nationwide "Operation Safe Home" program. 12 U.S.C. § 1715z–4a. Operation Safe Home focuses HUD's resources on identifying improper diversions of multifamily project funds by own-

---

**1.** T. Michael Wiley has filed a separate civil suit in the U.S. District Court for the Central District of Illinois, Springfield Division, asking the Court to determine whether he is properly the present general partner and managing agent of the St. Nicholas Apartments.

ers and managers of HUD insured multifamily projects. During the initial phase of the audit, the Inspector General of HUD requested Respondents to make available twelve categories of project books and records for the period of January 1, 1993 to January 31, 1996.

From this point, HUD and Respondents relate a somewhat different version of events. HUD claims that it requested certain documents which Respondent failed to provide. HUD claims that it required these documents because other project records revealed a "paper trail" of improper expenditures from project accounts to T. Michael's Catered Affair and CDE Building Renovation. HUD states that it was not clear from the records presented how these expenditures to T. Michael's Catered Affair and to CDE Building Renovation were for reasonable operating expenses or for necessary repairs to St. Nicholas Apartments. Because Respondents did not provide the required documents, HUD issued four subpoenas *duces tecum* to obtain the documents needed to complete the audit.

Respondents claim that they voluntarily complied, assisted, and cooperated with Petitioner's auditors. However, Respondents claim that the auditors acted unprofessionally, subjected the employees of St. Nicholas Apartments to harassment, and unnecessarily disrupted the daily business activities of St. Nicholas Apartments. They claim that the auditors were more interested in the personal affairs, records, and documents of Respondent T. Michael Wiley and St. Nicholas Apartments' staff than they were in the audit of St. Nicholas Apartments' financial activities.

For example, Respondents claim that Auditor Heath Wolfe made sexually suggestive comments to the employees and staff of St. Nicholas Apartments such as: "If it wasn't inappropriate I would kiss you" and "I find you charming and if it were not for the audit I would ask you out for dinner."[2] Respondents also claim that Auditor Wolfe intimidated them with threats of criminal charges if they did not cooperate fully, and he constantly reminded the employees that he was

"under the authority of the United States Government." Respondents allege that they made a complaint to HUD's Chicago office regarding the auditor's alleged unprofessional conduct. Respondents state that even though HUD claims to have performed an inter-departmental investigation, as of today, no results or written reports of that investigation have been provided to them regarding the auditor's alleged misconduct.

Finally, Respondents allege that the audit was motivated by the imminent foreclosure on St. Nicholas Apartments rather than for its stated purpose. Respondents state that HUD performed a two month long audit of St. Nicholas Apartments' financial activities, and Respondents are unwilling to resubmit themselves or their employees to any further harassment, intimidation, and/or defamation by HUD. Most importantly, Respondents argue that they oppose HUD's subpoenas because they are unlawful.

## II. LEGAL STANDARD

■ "In a subpoena enforcement proceeding, the role of the court is 'sharply limited.' " *EEOC v. Tempel Steel Co.*, 814 F.2d 482, 485 (7th Cir.1987), citing *EEOC v. South Carolina Nat'l Bank*, 562 F.2d 329, 332 (4th Cir.1977). However, a district court's decision to enforce or deny enforcement of an administrative subpoena is reviewed deferentially, applying an abuse of discretion or clearly erroneous standard of review. *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir.1982).

■ While an administrative agency of the Government has broad power to issue administrative subpoenas, the agency's authority is not without limits. An administrative subpoena must be issued for a proper purpose and in good faith. *United States v. Powell*, 379 U.S. 48, 58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964). Specifically, the administrative agency

"must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is

2. "You" refers to Jenette Hampton, an employee of St. Nicholas Apartments.

not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation has determined the further examination to be necessary and has notified the taxpayer in writing to that effect."

*Id.* at 57–58, 85 S.Ct. at 255. In *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995), the Seventh Circuit described the standard for judicial enforcement of an administrative subpoena as follows:

As a general proposition, courts enforce an administrative subpoena if it seeks reasonably relevant information, is not too indefinite, and relates to an investigation within the agency's authority. The court must, however, be satisfied that the demand for information is not "too indefinite" and that it has not "been made for an illegitimate purpose." A subpoena will not be enforced if the demand is "excessively burdensome," that is, if "compliance would threaten the normal operation of a respondent's business."

*Id.* at 645 (citations omitted).

### III. CLAIMS

Petitioner claims (1) that the four subpoenas have been issued pursuant to its statutory authority, (2) that it has complied with the applicable procedural requirements, (3) that the information sought is necessary to perform its audit of St. Nicholas Apartments' financial activities, and (4) that the subpoenas are not unreasonably broad or burdensome. Respondents respond by claiming (1) that Petitioner's subpoenas are not authorized by law, (2) that Petitioner has abused the process for issuing the subpoenas, (3) that the subpoenas have not been made in good faith, and (4) that Petitioner has already been provided with the information it seeks, and therefore, the subpoenas are unreasonably broad and burdensome.

### IV. ANALYSIS

A. *Authority to Issue Subpoenas.*

Respondents make two arguments to support their claim that Petitioner lacks the authority to issue these four administrative subpoenas *duces tecum.* First, Respondents argue that St. Nicholas Apartments' mortgage is not insured by the Secretary of HUD pursuant to Section 221(d)(4) of the National Housing Act. 12 U.S.C. § 1715l(d)(4). Therefore, St. Nicholas Apartments' financial activities and operations are not governed by HUD's rules and regulations. Second, Respondents argue that Petitioner's audit was nothing more than a regulatory compliance audit which is outside the scope of the Office of the Inspector General's authority. Respondents base this argument upon *Burlington Northern R.R. Co. v. Office of Inspector General, Railroad Retirement Board,* 983 F.2d 631 (5th Cir.1993).

Congress has made it "the duty and responsibility of each Inspector General … to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of [HUD and for] … preventing and detecting fraud and abuse in its programs and operations…." 5 U.S.C. app. 3 § 4(a)(1) & (3). Title 5 U.S.C. app. 3 § 6(a)(4) gives the Office of the Inspector General the power to issue subpoenas which are necessary to the performance of their administrative functions. An Inspector General may begin an audit or other investigatory steps "merely on suspicion that the law is being violated, or even just because it wants assurances that it is not." *United States v. Morton Salt Co.,* 338 U.S. 632, 642–43, 70 S.Ct. 357, 363–64, 94 L.Ed. 401 (1950).

■ The Court finds that Petitioner possessed the requisite authority to issue the four administrative subpoenas. First, it appears to the Court that St. Nicholas Apartments' mortgage is properly classified under Section 221(d)(4) of the National Housing Act. 12 U.S.C. § 1715l(d)(4). The Regulatory Agreement For Multi–Family Housing Projects, signed by the then general partner Ranbir S. Sahni, clearly states that the agreement between St. Nicholas Apartments and HUD was issued "Under Sections 207, 220, *221(d)(4),* 231 and 232" of the National Housing Act.

Furthermore, Respondent T. Michael Wiley signed an Assumption Agreement with HUD for the St. Nicholas Apartments which

states: "In consideration of the consent of the Secretary of Housing and Urban Development to the transfer of the general partnership interest to the Owner, and *in order to comply with the requirements of the Secretary of Housing and Urban Development the National Housing Act,* and the Regulations adopted pursuant thereto...." Respondents offer no evidence to support their claim that St. Nicholas Apartments' mortgage is not insured under Section 221(d)(4) of the National Housing Act.

Petitioner states that the audit of St. Nicholas Apartments' financial activities and the subsequent issuance of the four administrative subpoenas were pursuant to the "Operation Safe Home" program. This program is within Petitioner's statutory authority, 12 U.S.C. § 1715z–4a, and Respondents have offered no evidence which would show that the audit was performed or that the subpoenas were issued for any other purpose.

Second, Respondents' reliance on *Burlington Northern* is inapposite. While *Burlington Northern* held that the Office of the Inspector General lacked statutory authority to conduct a regulatory compliance audit, the Fifth Circuit so held because that audit was part of a long-term, continuing plan. *Burlington Northern,* 983 F.2d at 642. The Fifth Circuit opined that to allow the Office of the Inspector General to have broad investigatory and subpoena powers under those circumstances would undermine the independence and objectiveness that Congress intended the Inspector General to maintain. *Id.* In addition, the Fifth Circuit stated that to hold otherwise would allow the Office of the Inspector General to infringe upon the administrative and enforcement powers of the other administrative agency involved. *Id.*

In the instant case, Petitioner's audit was not part of a long-term, nationwide audit, but rather, consisted of an audit of a particular HUD insured mortgagor which was suspected of equity skimming. Therefore, the audit was within Petitioner's statutory authority.

Furthermore, although Respondents assert that Petitioner was acting in concert or in tandem with HUD when it initiated the audit, Respondents offer no evidence to support that assertion. In *Burlington Northern,* the Office of the Inspector General stepped beyond its statutory authority when it engaged in a regulatory compliance plan in tandem with the Railroad Retirement Board. It was the Railroad Retirement Board's responsibility for ensuring that railroad employers were properly paying the taxes into the Railroad Retirement Fund, yet the Railroad Retirement Board and the Office of the Inspector General entered into an agreement which in part stated that "its primary objectives were to determine proper and timely payment of tax contributions...." *Id.* at 636. The Fifth Circuit held that purpose to be outside the Inspector General's authority. *Id.*

In the instant case, there is no evidence that HUD and Petitioner entered into an agreement whereby Petitioner used its audit and subpoena powers as a regulatory compliance tool. In fact, Petitioner specifically denies any relationship between itself and HUD stating that the audit is completely independent of any ongoing compliance regulation matters between Respondents and HUD.

While the timing of the audit and the regulatory compliance matters may raise concerns regarding the independence of the audit, the Court cannot say that these concerns, without any additional evidence, are sufficient to nullify Petitioner's statutory authority to conduct the audit and to issue the administrative subpoenas. Accordingly, the Court finds that Petitioner has the statutory authority to administer the four administrative subpoenas pursuant to 5 U.S.C. app. 3 § 6(a)(4).[3]

**B.** *Compliance with Applicable Procedural Requirements.*

▪ Respondents claim that Petitioner's auditors engaged in gross misconduct while performing its audit of St. Nicholas Apart-

---

**3.** At least two other district courts have enforced subpoenas issued by the Office of the Inspector General pursuant to a review of HUD multifamily project's financial activities. *See Dawar v. HUD,* 820 F.Supp. 545 (D.Kan.1993); *see also Olsen v. HUD,* 1995 WL 686762 (E.D.La. Nov. 16, 1995).

ments' financial activities and operations. Respondents offer affidavits from several employees of St. Nicholas Apartments to substantiate these allegations. Respondents assert these alleged civil rights violations as a basis for denying the enforcement of Petitioner's administrative subpoenas.

Respondents also cite to *SEC v. ESM Gov't and Sec., Inc.,* 645 F.2d 310 (5th Cir. 1981), which adopted a totality of the circumstances test to be used by a court when determining whether improper conduct during an administrative investigation may constitute an abuse of process and preclude enforcement of an administrative subpoena. In *ESM,* the Fifth Circuit stated that when considering the totality of the circumstances, the court must consider (1) whether the administrative agency intentionally knew or misled the party under investigation about the purposes of the investigation, (2) whether that party was in fact misled, and (3) whether the subpoena is the result of the administrative agency's alleged improper conduct. *Id.* at 317–18.

Respondents, however, have failed to show step three of the *ESM* test. While Auditor Heath Wolfe's actions, if true, are deplorable, the subpoenas are not the result of Wolfe's conduct. In both *ESM* and *Wilson,*[4] the Fifth Circuit held that the Government agency had no proper claim to the documents requested through the use of an administrative subpoena because the basis for issuing the subpoenas was from information contained in documents improperly taken by the Government agency. *ESM,* 645 F.2d at 318; *Wilson,* 864 F.2d at 1220. In *ESM,* an SEC employee used deceit and trickery in order to gain the desired documents. *ESM,* 645 F.2d at 316.

In the instant case, Petitioner did not use any information improperly received as a basis for issuing the subpoenas. As stated above, Petitioner's audit of St. Nicholas Apartments' financial activities was performed under proper statutory authority. The Court cannot say that under the totality of the circumstances the four subpoenas

duces tecum were the result of any alleged wrongdoing by Petitioner's auditors. In the present case, the proper redress for the auditors' alleged wrongdoing would not be to deny enforcement of the subpoenas. Accordingly, the Court finds that Petitioner complied with all of the applicable procedural requirements when it issued the four administrative subpoenas.

### C. *Necessity and Relevancy of the Information Sought.*

Respondents also allege that Petitioner issued the four administrative subpoenas in order to harass Respondents and to assist HUD in its regulatory functions. In short, Respondents claim that the subpoenas were not issued in good faith. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255.

However, Respondents offer nothing more than innuendo, speculation, and mere allegations to support their claim. Government officials enjoy a well-settled presumption that they carry out their duties in good faith. *Degner v. Celebrezze,* 317 F.2d 819, 820 (7th Cir.1963). In the instant case, Petitioner "is entitled to the normal presumption of good faith that, in courts of law, government officials still enjoy, that must be refuted by well-nigh irrefragable proof." *Starr v. FAA,* 589 F.2d 307, 315 (7th Cir.1978).

Furthermore, what constitutes relevancy for purposes of an administrative subpoena is almost as broad as the administrative subpoena power itself. As long as the information and materials requested "touches a matter under investigation," the material and information requested is relevant. *EEOC v. Elrod,* 674 F.2d 601, 613 (7th Cir. 1982). Petitioner states that the administrative subpoenas were issued as a result of a "paper trail" discovered by their auditors which indicates the appearance of equity skimming by Respondents. Accordingly, the Court finds that the materials requested would be relevant to the stated purpose of the audit and that Respondents have not overcome the presumption by irrefragable

---

**4.** *United States v. Wilson,* 864 F.2d 1219 (5th Cir.1989), is a supplement case to *ESM* also

relied upon by Respondents.

proof that Petitioner was performing its duties in good faith.

### D. *Reasonableness of Subpoenas.*

Finally, Respondents claim that Petitioner's subpoenas are unreasonably broad and burdensome. Respondents base this argument on the fact that Petitioner's subpoenas require them to reproduce documents and records which have previously been provided to Petitioner. Therefore, Respondents claim that the subpoenas are not limited in scope and are unreasonably broad and burdensome.

■■■ The burden of showing that an administrative subpoena is unreasonably burdensome is on the subpoenaed party. *Powell,* 379 U.S. at 58, 85 S.Ct. at 255; *Allen,* 672 F.2d at 1267. To establish a claim that an administrative subpoena is excessively burdensome, the party being investigated "must show that compliance would threaten the normal operation of its business." *Quad/Graphics,* 63 F.3d at 648, citing *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 313 (7th Cir.1981).

■■■ In the instant case, Petitioner's four subpoenas *duces tecum* are not unreasonably broad or burdensome. A subpoenaed party will always be forced to endure some inconveniences and burdens when complying with a subpoena, but these inconveniences and burdens are necessary to the furtherance of a Government agency's legitimate inquiry and is in the public's best interest. *FTC v. Texaco, Inc.,* 555 F.2d 862, 882 (D.C.Cir. 1977).

Furthermore, Respondents have failed to show how compliance would threaten the normal operations of its business. *EEOC v. A.E. Staley Mfg. Co.,* 711 F.2d 780, 788 (7th Cir.1983). In *Quad/Graphics,* the Seventh Circuit rejected a subpoenaed party's claim that compliance would threaten normal business operations even though the subpoenaed party submitted an affidavit stating that it would require 203,994 employee hours in or-

der to comply with the subpoena. *Quad/Graphics,* 63 F.3d at 648.[5]

■■■ Respondents have not shown that the prior audit unduly interrupted its business operation (other than for the alleged misconduct by Petitioner's auditors), and it is doubtful that compliance with these administrative subpoenas would constitute an unreasonable interference. This is especially true because the records and documents, although issued to four separate entities, are maintained at one location. The subpoenas are limited in scope to five years and cover only those documents and records necessary to determine whether or not Respondents are engaged in equity skimming. Accordingly, the Court finds that the four administrative subpoenas are not unreasonably broad or burdensome.

### CONCLUSION

■■■ In summary, "[u]nder *Powell,* the government must establish four elements: (1) There must be a legitimate purpose for the investigation; (2) the specific inquiry must be relevant to that purpose; (3) the information sought must not already be in the government's possession; and (4) all internal administrative procedures must have been followed. Once the government has met its burden on each of the four elements, the burden shifts to the defendant to challenge the summons on any appropriate ground...." *Wilson,* 864 F.2d at 1222. Petitioner has met its burden on each of the above four elements, but Respondents have not met their burden of challenging Petitioner on any of these grounds. Furthermore, although there are factual disputes between Petitioner and Respondents (especially in the alleged misconduct by Petitioner's auditors), the resolution of those conflicts would not warrant a refusal to enforce the administrative subpoenas. *FTC v. MacArthur,* 532 F.2d 1135, 1141 (7th Cir.1976).

*Ergo,* Petitioner's Petition for Summary Enforcement of Subpoenas Issued Pursuant to 5 U.S.C. app. 3 § 6(a)(4) is ALLOWED.

---

5. *See also EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 479 (4th Cir.1986), where the Fourth Circuit rejected a challenge to an administrative subpoena where the subpoenaed party had not shown that the cost of gathering the information was unduly burdensome or that it would threaten its normal business operations.

Petitioner's four administrative subpoenas *duces tecum* issued to Respondents are to be enforced as issued.