DECISION
In these two cases the plaintiffs challenge the validity of regulations adopted by the Director of the Department of Environmental Management pursuant to the director's statutory authority to "make rules and regulations for the control, government and use of all the public properties and highways under his or her care . . . " G.L. § 32-2-4. They do not appear to contest the director's statutory authority to promulgate the regulations in question. They do, however, assert that the director failed to follow the procedure prescribed by G.L. § 42-35-3
for the adoption of administrative rules, and described in Newbay Corporation v. Annarummo, 587 A.2d 63, 65-66 (R.I. 1991). Consequently, they argue that the regulations are invalid and unenforceable.
To be more precise, the issue presented is whether or not the director has complied in each case with the following provisions of §42-35-3(a)(3):
 "(a) Prior to the adoption, amendment, or repeal of any rule the agency shall:
 * * * * *
 (3) Demonstrate the need for the adoption, amendment, or repeal of any rule in the record of the rulemaking proceeding. The agency shall demonstrate that there is no alternative approach among the alternatives considered during the rulemaking proceeding which would be as effective and less burdensome to affected private persons as another regulation. This standard requires that an agency proposing to adopt any new regulation must identify any other state regulation which is overlapped or duplicated by the proposed regulation and justify any overlap or duplication."
The case has been submitted for decision on the pleadings and memoranda with attached exhibits filed by the parties. No evidence has been introduced to prove or rebut any factual representations made by any party. Each party, of course, denies the conclusions argued by the other.
The plaintiffs' motion to strike a belated memorandum submitted by the defendant in C.A. No. 00-2035 is denied.
Based on the pleadings and memoranda, the history of the events which give rise to this dispute are readily discernible and are not the subject of serious dispute. Among the public properties under the care of the director are the Arcadia and George Washington Management Areas. On July 10, 1998, the director gave notice of a public hearing to be held on August 12, 1998 on proposed regulations for the Arcadia and George Washington Management Areas pertaining to permits for special events, which were defined as groups of 75 or more participants, but not to exceed a total of 300 participants, and limited to the period between June 20 through September 30. Such events were to be limited to not more than four in each Area, and would be granted on a lottery basis, if necessary. No more than two such permits per year would be issued "per individual recreation use type." The regulations imposed standards for denial of such permits and set forth the conditions upon which they would be granted. In addition, the regulations specially limited the use of motorcycles in the Arcadia Management Area, but these limitations are apparently not the source of the dispute giving rise to these cases.
The problems addressed by these regulations had been the subject of discussion within the department and between representatives of the department and the plaintiffs for approximately three years prior to the public notice, according to the department's response to the plaintiffs' request for the agency's "reasons for overruling the considerations urged against its (the regulation's) adoption," as required by §42-35-3(a)(2).
The plaintiffs appeared at the public hearing on August 12, 1998 and presented their objections to the proposed regulations for consideration by the director. They contended that they ought to be permitted to conduct a "special event" prior to June 20, and they also complained that the lottery method of assignment of dates left them uncertain as to whether they could schedule their events in time. The plaintiffs also alleged that they were the only organizations who would ever desire to schedule "special events" in the management area, and that, hence, the rulemaking was merely the denial of a license. Finally, the plaintiffs asserted that the department had failed to demonstrate the requisite conditions required under § 42-35-3(a)(3) for the adoption of the regulation.
That last assertion seems to rest on an implied assumption that the requirements of
 § 42-35-3(a)(3) must be satisfied by evidence presented by the department at the public hearing mandated in § 42-35-3(a)(2). Based on counsel's request for reasons for the decision to promulgate the regulations, as allowed by § 42-35-3(a)(2), and the argument made in memoranda filed with this Court, the plaintiffs regard the public hearing as a form of quasi-judicial proceeding, at which the agency and the interested persons are like adversaries in litigation with one another. It seems to this Court, rather, that the public hearing is more like a legislative committee hearing, at which public comment, pro and con, may be received regarding prospective legislation referred to that committee. A properly adopted administrative rule like the one here in question is classified as a "legislative rule," and has the force and effect of law. Allard v. Department of Transportation, 609 A.2d 930, 933 (R.I. 1992). It is not like the judgment of a judicial tribunal in a contested case.
Unlike a party aggrieved by the enactment of legislation, the party opposed to a regulation is accorded a right of inquiry by §42-35-3(a)(2):
 "Upon adoption of a rule, the agency, if requested to do so by an interested person, either prior to adoption or within thirty (30) days thereafter, shall issue a concise statement of the principal reasons for and against its adoption, incorporating therein its reasons for overruling the considerations urged against its adoption."
On August 18, 1998, the plaintiffs made such a request for the statutory "concise statement." On November 19, 1998 the director adopted the proposed regulation, effective December 9, 1998. On December 3, 1998, the chief of the Division of Fish and Wildlife responded to the plaintiffs' request in accordance with the statute.
He disclosed the following as the reasons for the adoption of the proposed regulation:
 "As you are also aware, the subject regulations were determined by the Department to be necessary in order to reduce the adverse environmental impact caused by special events which are held during times of the year that are deemed to be particularly sensitive to the resource. The period of time designated for special events by the subject regulations was selected because it was determined to have the least overall adverse impact upon fish and wildlife resource, environmental quality factors, and other users of the area. Conversely, spring is considered to be the season in which most substantial impact could be expected because heavy rainfall can cause the soil to be most susceptible to damage if an event is attended by a large number of participants. Large groups of individuals also present the possibility of interference with the nesting and brood rearing common during this season for species in this region.
Your client's use of the management areas is not the only usage which is intended to be regulated by the subject regulations. However, the operation of motorcycles creates noise which disturbs the type of wildlife which is normally found in the subject area. In addition to frightening away certain wildlife, motorcyclists also can destroy the habitat in trail areas and may kill less mobile species.
Noise caused by motorcycle operation also disrupts the use of the area by hunters, fishermen, and hikers. It was determined that the proposed regulations were appropriate in order to minimize the adverse impact upon the management areas. It was also determined that the subject regulations did not present an adverse economic impact on small business."
Thereupon, on December 31, 1998, the plaintiffs brought an action in this Court pursuant to § 42-35-7 to challenge the validity of the adoption of the regulations. In that action, the plaintiffs applied for a temporary restraining order and for a preliminary and permanent injunction to prohibit the department from applying the regulation to their pending applications for special events in 1999, including an event scheduled on May 16, 1999. That action is docketed in this Court as Civil Action Number PC-98-6473. On January 11, 1999, the application for a temporary restraining order was denied after hearing on January 6. The case was set down for hearing on the merits on January 20, 1999.
After a hearing on January 20, the plaintiffs' motion for a preliminary and permanent injunction was "stayed" until a status review on February 12, 1999, but the parties were ordered to proceed to an "expedited" hearing before the department's administrative adjudication division on the plaintiffs' administrative appeal from a denial by the Arcadia Management Council of a permit to conduct an event on May 16, 1999. Their application for events on July 11 and August 1 was approved subject to technical conditions, to which the plaintiffs appear to have made no serious objection.
On February 3, 1999, the plaintiffs moved for leave to amend their complaint to conform to the evidence presented at the January 20, 1999 hearing. In the meantime, the plaintiffs pursued their administrative appeal in the department. After hearing on March 29, 1999, the Court denied the plaintiffs' application for a preliminary and permanent injunction. The record does not disclose the disposition of the plaintiffs' administrative appeal within the department. The plaintiffs' motion to amend their complaint was granted by the same order on March 29, 1999. All that remains pending in the 1998 case is the plaintiffs' request that the Court invalidate the 1998 regulations by declaratory judgment.
While the 1998 case was still pending, on March 29, 2000, the department held hearings on proposed amendments to the Rhode Island Management Area Regulations. The proposed amendments are substantially the same as the 1998 regulations. The definition of "special event" was refined, but remained substantially unchanged. The permit period would remain from June 20 through September 30, and the number of such events would remain limited to four each in the Arcadia and George Washington Management Areas. The lottery system remained the method of allocating permits. Two such permits continue to be the limit for individual recreation use type.
Once again, the plaintiffs appeared at the public hearing and opposed the adoption of the proposed regulations. Once again, on May 26, 2000, the regulations were duly promulgated by filing them with the Secretary of State. Once again, on June 9, 2000, the plaintiffs brought suit in this Court challenging the 2000 regulations on the same grounds as they challenged the 1998 regulations. This action is docketed as PC-00-3035. The two cases have been consolidated for decision.
This Court is satisfied that the "demonstration" called for in §42-35-3(a)(3) does not need to be made at the hearing required by §42-35-3(a)(2). That hearing is designed to elicit written and oral "data, views or arguments" from the public regarding a proposed rule and the hearing affords the rulemaking agency an opportunity to consider the "data, views or arguments" submitted by opponents as well as proponents of proposed regulations. These hearings are obviously far more "legislative" than "judicial."
Nothing in § 42-35-3(a)(3) limits the "record of the rulemaking proceeding" to the matters raised and discussed at the public hearing. In fact, nothing in the statute requires that any record be made, or kept of the proceedings at a rulemaking public hearing. That record plainly includes all the information received and compiled by the agency before it finally proposed the regulations for adoption. Section §42-35-3(a)(3) does require that somewhere in the agency's files there be a "record" of the need for the proposed rule and that there is "no alternative approach among the alternatives considered during the rulemaking proceeding which would be as effective and less burdensome to affected private persons as another regulation." (Emphasis supplied.)
There is no evidence in the record before this Court that any alternative approach was ever considered by the agency other than (1) to limit the number of "special events" in the management areas, (2) to allocate events by lottery in the event of more requests than the number of dates, and (3) to limit the dates between which such events could be conducted. No other alternative regulation other than the one adopted has been proposed by the plaintiffs, or anyone else, either at the public hearing or during the agency's preliminary investigation and research before proposing these regulations.
It is clear from the limited record in this case that, before issuing the 2000 regulations, the department did have in its records information that regulation was necessary to protect wildlife habitat and to avoid disruption to wildlife reproductive cycles as well as to avoid incompatible user group conflicts. Although the plaintiffs have had abundant opportunity for pre-trial discovery of that information in these proceedings, they have mistakenly argued that the agency was required to somehow produce that information at a hearing designed to allow for public, not agency, comment, and, accordingly, have thereby foregone any challenge to the sufficiency of that information in the agency's records to "demonstrate" the need for these regulations. Nothing in § 42-35-7
shifts any burden to the defendant agency to produce its record or demonstrate the validity of the regulation in the event of administrative judicial challenge.
The plaintiffs, of course, were permitted by § 42-35-3(a)(2) to request a statement of reasons for the adoption of the regulation. They did make such a request and, on May 23, 2000, they received their response. In the absence of any evidence before this Court to the contrary from the plaintiffs, who, after all, have the burden both of production and persuasion in these actions, the Court has no option but to accept as truthful the assertions of facts in that communication.
For all the foregoing reasons, the Court concludes that the plaintiffs have failed as a matter of law and fact to satisfy their burden of showing that the challenged regulations are invalid or inapplicable.
Accordingly, judgment will enter for the defendant in each case for the defendant denying and dismissing the plaintiffs' complaint with costs to the defendant.
The defendant will present a form of judgment for entry upon notice to the plaintiffs before the close of court business on Friday, January 5, 2000.